# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **BRIAN SOUTHARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 4:15-cv-01232-NCC |
| ) | |
| ) | |
| **WILLIAM B. GOEHL,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Brian Southard's ("Southard") Motion for Attorneys' Fees, Costs, and Post-Judgment Interest (Doc. 42). Defendant William ("Bill") Goehl ("Goehl") has not responded and the time to do so has elapsed.[1] Accordingly, the Motion is ready for disposition. For the following reasons, Plaintiff's Motion will be **GRANTED, in part**.

## I. BACKGROUND

This is an action for breach of contract (Count I), breach of fiduciary duty (Count II), Fraudulent Misrepresentation (Count III), Conversion (Count IV), Declaratory Judgment (Count V), Injunction (Count VI), Punitive Damages (Count VII), and Attorneys' Fees (Count VIII) arising out of the souring of a business relationship. Southard and Goehl each own 50% of Dent Nation International, LLC ("DNI"), which specializes in repairing automobiles damaged by collisions, weather, and other causes. Southard and Goehl formed DNI as a Missouri LLC on June 13, 2012. By September 1, 2012, Southard had invested $58,955.21 in capital contributions to DNI and deposited $15,000 into DNI's bank account. However, as of March 2013, Goehl

---

[1] In its October 26, 2016 Order, the Court granted Goehl until November 23, 2016 to file a response to Southard's Motion (Doc. 40).

removed Southard's access to the DNI bank account. Goehl also allegedly failed to pay Southard his 50% interest of DNI's disbursements as required by the operating agreement, used company money for personal and non-business related expenses, and subjected the company account to overdraft and other fees.

On September 27, 2016, Southard filed a Motion to Enforce Settlement Agreement and Mutual General Release, Entry of Consent Order and Judgment, and Award of Attorneys' Fees and Costs (Doc. 34) (hereinafter "Motion to Enforce Settlement Agreement"). Relevant to the current Motion, in his Motion to Enforce Settlement Agreement, Southard requested attorneys' fees and costs for work associated with the enforcement of the settlement agreement (*Id.* at 8-9). On October 12, 2016, after a conference call with counsel, the Court granted Goehl an additional seven (7) days to respond to the Motion (Doc. 37). No response was filed. On October 26, 2016, the Court held a Motion Hearing to address Southard's Motion to Enforce Settlement Agreement (Doc. 39). After the hearing and for the reasons stated on the record, the Court granted Southard's Motion to Enforce Settlement Agreement, entered the Parties' Consent Order and Judgment, closed the case, and established a timeline for the Parties to brief the attorneys' fees and cost issues (Docs. 40, 41).

On November 19, 2016, Southard filed his Motion for Attorneys' Fees (Doc. 42). In his Motion, Southard requests $5,120.87 for 15.5 hours at an hourly fee of $285.00 and costs in the amount of $703.37 for travel by Southard's counsel Mr. Lochlin Samples ("Mr. Samples") (*Id.* at 3-4). Southard also request $14,430.00 for the work of Mr. Joseph Dinardo ("Mr. Dinardo"), also an attorney at Mr. Samples' firm and a collections expert, for 44.4 hours of work at an hourly fee of $325.00 (*Id.* at 4). Mr. Dinardo is not an attorney of record in this case. In total, Southard requests an award of $19,550.87 for attorneys' fees and costs related to enforcing the

2

settlement agreement (*Id.* at 5). Southard additionally requests post-judgment interest on the entire judgment pursuant to 28 U.S.C. § 1961(a) (*Id.* at 6). Therefore, in consideration of the Court's prior entry of Judgment in the amount of $250,000, attorneys' fees, costs, and then-accrued post-judgment interest, Southard requests the Court award Southard $269,214.23 and direct that interest continue to accrue according to 28 U.S.C. § 1961(a).

In support of his request, Southard provides the Court with the affidavit of Mr. Samples indicating Mr. Samples' education, background and experience along with an overview of all of the fees and costs requested (Doc. 42-1 at 1-3). Specifically, Mr. Samples indicates that his standard hourly rate is $325.00 but, at the time he was retained by Southard, his rate was $285.00 (*Id.* at 2). He states that he spent 5.4 hours of his time through October 31, 2016 and an additional 10.2 hours since that time through the filing of the current motion on matters relating to the breach of the settlement agreement (*Id.* at 3). Attached to the affidavit, Southard provides: (1) a copy of the controlling fee agreement between Mr. Samples' firm and Southard (*Id.* at 4-8), (2) timesheets for Mr. Samples and Mr. Dinardo from August 2, 2016 to August 29, 2016, from September 9, 2016 to September 27, 2016, and from October 7, 2016 to October 31, 2016 (*Id.* at 9-15); and (3) Mr. Samples' expense report for his travel related to the October 26, 2016 hearing and associated supporting documentation for the report including relevant receipts (*Id.* at 16-23).

Southard also provides the Court with the affidavit of Mr. Dinardo indicating his education, background and experience (Doc. 42-2). Mr. Dinardo states that he charged Southard at a rate of $195.00 per hour for 39.0 hours of work for a total of $7,605.00 for the period through October 31, 2016 (*Id.*). He notes that this total amount was reduced to $6,522.92 (*Id.*). Mr. Dinardo indicates that since October 31, 2016 through the date of the motion, he spent an additional 5.4 hours working for Southard "in attempting to collect monies owed to him by

[Goehl]" (*Id.* at 2). Finally, Southard provides the affidavit of Southard indicating that he has incurred additional legal fees and costs to enforce the terms of the settlement agreement (Doc. 42-3).

## II. DISCUSSION

"In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies." *Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011). "In Missouri, attorney's fees are not recoverable from another party, except when allowed by contract or statute." *Id.* Here, the settlement agreement entered into by the Parties contemplated the award of attorneys' fees and costs upon the material breach of a party (Doc. 38 at ¶13). The Court previously determined that Goehl materially breached the settlement agreement and, therefore, granted Southard's Motion to Enforce Settlement Agreement. In so doing, the Court also granted Southard's request for attorney's fees and costs (Doc. 40). The only remaining issue before the Court is to determine a reasonable award of attorney's fees and costs.

"Although a trial court has discretion to award reasonable attorneys' fees in Missouri, various factors are appropriately considered to determine the amount of fees to award." *PNC Bank, Na'l. Ass'n v. El Tovar, Inc.*, No. 4:13-CV-1073 CAS, 2014 WL 1648747, at *6 (E.D. Mo. Apr. 23, 2014). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 429 (8th Cir. 2017) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)). There is a strong presumption that the lodestar calculation represents a reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). When setting the reasonable number of hours and reasonable hourly rate, the Court takes

into account: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment, due to acceptance of case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434 (1983).

The first step of the lodestar analysis requires the Court to determine the reasonable hourly rate for the attorney's services. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). The fee applicant has the burden to show that the requested rate is reasonable and consistent with rates within the community "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "[C]ourts may draw on their own experience and knowledge of prevailing market rates" in determining a reasonable rate. *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). "[D]etermining an appropriate 'market rate' for the services of a lawyer is inherently difficult." *Blum*, 465 U.S. at 895 n.11. "[W]here an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award." *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988).

Southard has submitted several affidavits as well as detailed billing statements which identify the attorney performing the task, the legal task performed, the amount of time expended, and the billable amount for the task given the attorney's hourly rate. In Southard's Motion for Attorneys' Fees, Southard requests an hourly rate of $325.00 for Mr. Dinardo and an hourly rate

5

of $285.00 for Mr. Samples.  The Court finds Mr. Samples' requested hourly rate to be reasonable for an attorney of his skill and experience in light of the Court's familiarity with billing rates in this area.  *See SSM Managed Care Org., L.L.C. v. Comprehensive Behavioral Care*, Inc., No. 4:12-CV-2386 CAS, 2014 WL 1389581, at *3 (E.D. Mo. Apr. 9, 2014) (providing a then-current overview of local billing rates).  However, contrary to Southard's request in his Motion, Mr. Dinardo states in his affidavit that he charged Southard at a rate of $195.00 per hour not $325.00 per hour (Doc. 42-2 at 2).  This billable rate is further supported by the billing records which indicate that Mr. Dinardo's hourly fee is $195.00 (*See, e.g.,* Doc. 42-1 at 13).  Accordingly, the Court finds the reasonable hourly rate for Mr. Dinardo's work to be $195.00 per hour not $325.00 per hour.

Next, the Court must determine the reasonable number of hours expended in bringing the Motion to Enforce Settlement Agreement.  Southard indicates that Mr. Dinardo spent a total of 44.4 hours and Mr. Samples spent a total of 15.5 hours on the matter.  First, the Court finds the number of hours billed by Mr. Dinardo to be excessive in light of the clear cut facts underlying the Motion to Enforce Settlement Agreement.  While Mr. Dinardo appears to have taken the lead on this case after a settlement was reached, he was never counsel of record in this matter and has requested more than forty hours for work largely related to one motion.  Next, the Court notes that Mr. Samples and Mr. Dinardo appear to have performed some of the same tasks.  For example they both attended a telephone conference before the undersigned.  Counsel also frequently communicated with one another regarding the status of the case.  A district court should exclude "excessive, redundant, or otherwise unnecessary" hours from its estimate.  *Hensley*, 461 U.S. at 434.  However, "[t]ime spent by two attorneys on the same general task is not . . . per se duplicative.  Careful preparation often requires collaboration and rehearsal."

*Myers v. Aitkin Cty.*, No. CV 14-473 (JRT/LIB), 2017 WL 1134575, at *3 (D. Minn. Mar. 27, 2017) (quoting *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir. 1998)). Accordingly, and in consideration of Mr. Dinardo's already reduced fee, the Court finds a reduction of 4.4 hours, or approximately 10%, from Mr. Dinardo's billed hours for a total of 40 hours to be reasonable. Therefore, Southard is awarded $12,217.50 in attorney's fees representing 15.5 hours billed at $285.00 per hour for the work of Mr. Samples and 40.0 hours billed at $195.00 per hour for the work of Mr. Dinardo.

Southard also seeks reimbursement of costs and expenses in the amount of $703.37 for Mr. Samples' travel expenses for his trip to Saint Louis to appear at the hearing before the undersigned on the Motion to Enforce Settlement Agreement. The Court finds these costs to be reasonable and necessary and will therefore award costs in the amount of $703.37.

Finally, Southard requests post-judgment interest pursuant to 28 U.S.C. § 1961(a) for the entire judgment, including attorneys' fees and costs. Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." In this Circuit, post-judgment interest on attorney's fees accrues from "the date the court recognizes the right to such fees in a judgment" rather than when the court's order was entered quantifying the award. *Jenkins by Agyei v. State of Mo.*, 931 F.2d 1273, 1277 (8th Cir. 1991). As Judgment was previously entered on October 26, 2016, post-judgment interest accrues pursuant to section 1961(a) from that date until full payment is made.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Brian Southard's Motion for Attorneys' Fees, Costs, and Post-Judgment Interest (Doc. 42) is **GRANTED, in part**. Southard is awarded

$12,217.50 in attorneys' fees and $703.37 in costs. These amounts shall be added to the Court's prior award of $250,000 for a total award of $262,920.87 in favor of Southard. Post-judgment interest shall accrue on the entire amount, including the award of attorney's fees and costs, from the October 26, 2016 Judgment and continue to accrue until the entire judgment is paid in full. Dated this 21st day of July, 2017.

                                                /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE